Slip Op. 09-88

UNITED STATES COURT OF INTERNATIONAL TRADE

```
┌─────────────────────────────────────┐
│ PUERTO RICO TOWING & BARGE CO.,     │
│                                     │
│              Plaintiff,             │
│                                     │                    Before: Pogue, Judge
│         v.                          │
│                                     │                    Court No. 04-00463
│ UNITED STATES,                      │
│                                     │
│              Defendant.             │
└─────────────────────────────────────┘
```

[Defendant's motion for summary judgment is granted; Plaintiff's cross-motion for summary judgement is denied.]

## OPINION

Dated: August 25, 2009

Peter S. Herrick, P.A. (Peter S. Herrick) for the Plaintiff.

Tony West, Assistant Attorney General; Barbara S. Williams, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Aimee Lee); Michael Heydrich, Office of Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection for the Defendant.

**Pogue, Judge:** This action raises the issue of whether San Juan, Puerto Rico ("San Juan") is a port of the United States for the purposes of section 466 of the Tariff Act of 1930 (the "Vessel Repair Statute"), as amended, 19 U.S.C. § 1466.[1]

---

[1] Further citations to the Tariff Act of 1930 are to the relevant provisions of Title 19 of the U.S. Code, 2006 edition.

Court No. 04-00463                                                        Page 2

The Vessel Repair Statute imposes a 50 percent tariff on the value of certain vessel repairs performed abroad,[2] except that a vessel that "arrives in a port of the United States two years or more after its last departure from a port in the United States" is subject to the duties only on those repairs made "during the first six months after the last departure of such vessel from a port of the United States." Id. § 1466(e)(1)(B).[3]

Seeking to invoke this exemption, Plaintiff, Puerto Rico Towing & Barge Co. ("PRT") brings this action to challenge ship repair duties assessed on PRT's U.S.-flagged vessel, M/V Honcho (the "Honcho"), by Defendant U.S. Customs and Border Protection ("Customs"). Because the Honcho is based in San Juan, and obtained its repairs in the Dominican Republic, PRT claims that the Honcho's repairs fall within the exemption. Pl.'s Am. Compl. ¶¶ 12, 21, 26.

---

[2] The statutory text states, in relevant part:

> The . . . expenses of repairs made in a foreign country upon a vessel documented under the laws of the United States to engage in the foreign or coasting trade, or a vessel intended to be employed in such trade, shall, on the first arrival of such vessel in any port of the United States, be liable to entry and the payment of an ad valorem duty of 50 per centum on the cost thereof in such foreign country. . . .

19 U.S.C. § 1466(a).

[3] Section 1466(e)(1)(B) provides in relevant part:

> In the case of any vessel . . . that arrives in a port of the United States two years or more after its last departure from a port in the United States, the duties imposed by [§1466(a)] shall [not] apply.

Court No. 04-00463 Page 3

Currently before the court are Defendant's motion for summary judgment and Plaintiff's cross-motion for summary judgment pursuant to USCIT R. 56. The court has jurisdiction pursuant to 28 U.S.C. § 1581(a).[4]

Because the court concludes that, for the purposes of the Vessel Repair Statute, San Juan is a port of the United States, the court grants summary judgment for Defendant and denies Plaintiff's cross-motion.

## BACKGROUND

The Honcho has not entered any mainland U.S. port since 1998. Pl.'s Am. Compl. ¶¶ 21, 22. Rather, in 1998, the Honcho departed San Francisco and made San Juan its home port. Id. ¶ 21. In need of repairs on its load line, the Honcho sailed from San Juan to the Dominican Republic on April 28, 2001. Pl.'s Answers and Resp. to Def.'s First Set of Interrogs. and Req. for Prod. ("Interrogs.") at 3(b); Pl.'s Am. Compl. ¶ 8. After completing these repairs, on May 8, 2001, the Honcho returned to Puerto Rico, Pl.'s Am. Compl. ¶ 12, and upon the Honcho's reentry into San Juan, PRT filed U.S. Customs Entry No. C20-0038538-8. Id. Because the Honcho was U.S.-flagged, i.e., documented under the laws of the United States, and because

---

[4] 28 U.S.C. § 1581(a) provides: "The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930." In turn, section 515 of the Tariff Act of 1930, 19 U.S.C. § 1515, entitles parties to obtain agency review of a protest of the imposition of Customs duties.

Court No. 04-00463                                                    Page 4

it was repaired in a foreign shipyard, Customs, pursuant to its interpretation of 19 U.S.C. § 1466(a), assessed an *ad valorem* duty of 50 percent of the cost of the Dominican repairs. Id. ¶¶ 12-13. Claiming exemption from these duties, PRT applied to Customs in New Orleans for relief on August 21, 2002, <u>id.</u> ¶ 14, which Customs denied on May 4, 2004. <u>Id.</u> ¶ 17. Subsequently, on August 22, 2005, PRT filed a amended entry. <u>Id.</u> ¶ 18. After paying all duties and interest, PRT has timely filed this action in this court. <u>Id.</u> ¶¶ 19-20.

## **STANDARD OF REVIEW**

The facts in this matter are undisputed, and the parties agree that their dispute turns upon an issue of statutory interpretation. Def.'s Mem. in Supp. of Def.'s Mot. for Summ. J. 6; Pl.'s Mem. in Opp. to Def's Mot. for Summ. J. ("Pl.'s Mem.") 2-3. Accordingly, pursuant to USCIT R. 56(c), the matter is ripe for summary judgment. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986); <u>see</u> <u>also</u> <u>Sea-Land Serv., Inc. v. United States</u>, 23 CIT 679, 684, 69 F. Supp. 2d 1371, 1375 (1999), <u>aff'd</u>, 239 F.3d 1366 (Fed. Cir. 2001); <u>Phone-Mate, Inc. v. United States</u>, 12 CIT 575, 577, 690 F. Supp. 1048, 1050 (1988), <u>aff'd</u>, 867 F.2d 1404 (Fed. Cir. 1989).

## **DISCUSSION**

PRT argues that the Honcho's repairs in the Dominican Republic are exempted from duties under 19 U.S.C. § 1466(e) because the Honcho has not been in a U.S. port for over two years. But the

Court No. 04-00463 Page 5

court's review of the language of the Tariff Act of 1930, and related statutory and regulatory provisions -- as explained further below -- do not support PRT's claim. Rather, PRT's argument fails because the Honcho's home port of San Juan qualifies as a port of the United States for the purposes of 19 U.S.C. § 1466, and has been used by the Honcho within two years prior to the repairs in the Dominican Republic. Therefore, the Honcho has not been absent from a U.S. port for the required two years and is accordingly not exempted from vessel repair tariffs.

**A. The Language of the Statute Bars Exemption**

19 U.S.C. § 1466(e) does not itself define a "port of the United States." However, section 1466 is part of the Tariff Act of 1930, which contained a set of definitions applicable to Vessel Repair determinations. Specifically section 401 of the Tariff Act of 1930, 19 U.S.C. § 1401(h), defines the "United States" for purposes of section 1466(e).[5] Section 1401(h)'s definition states that the "United States" includes "all Territories and possessions of the United States except the Virgin Islands, American Samoa, Wake Island, Midway Islands, Kingman Reef, Johnston Island, and the island of Guam." Puerto Rico is a territory of the United States. See Treaty of Paris, art. II, Dec. 10, 1899, 30 Stat. 1754, 1755; Examining Bd. of Eng'rs, Architects & Surveyors v. Flores De Otero,

---

[5] Section 1401, like section 1466(e), is part of Subtitle III of Chapter 4 of Title 19, and provides definitions of terms "used in the Subtitle."

Court No. 04-00463                                                  Page 6

426 U.S. 572, 586 & n.16 (1976); <u>Downes v. Bidwell</u>, 182 U.S. 244, 280 (1901).  Puerto Rico is also not one of the enumerated exceptions in section 1401(h); Puerto Rico is therefore, for the purposes of 19 U.S.C. § 1466, a territory that is part of the United States.[6]

The Honcho arrived in San Juan ten days after it had completed repairs in the Dominican Republic. <u>See</u> Interrogs. at 3(c).  Because San Juan is in Puerto Rico, and because Puerto Rico is part of the United States, the Honcho cannot be exempted under section 1466(e) unless San Juan is not a *port* under section 1466.  Only then can PRT argue exemption on the grounds that the Honcho last visited a U.S. port, San Francisco, more than two years prior to the duty.

However, San Juan, Puerto Rico, is a port, and the Honcho is, therefore, not exempted because it has not been away from a U.S. port for longer than two years.  The dictionary meaning of "port" is a harbor where ships load and unload cargo. <u>See</u> Black's Law Dictionary 1199 (8th ed. 2004); <u>Webster's Third New Int'l Dictionary</u> 1767 (2002); <u>American Heritage Dictionary</u> 1410 (3d ed. 1996).[7]  San

---

[6] Accordingly, when applied to in this case, section 1401(h) modifies section 1466(e) to state: "In the case of any vessel . . . that arrives in a port of [Puerto Rico] two years or more after its last departure from a port in [Puerto Rico], the duties imposed shall [not] apply."

[7] "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." <u>Robinson v. Shell Oil Co.</u>, 519 U.S. 337, 341 (1997) (citation omitted).  Further, "[i]t is well established that when the statute's language is plain, the sole

Court No. 04-00463                                                    Page 7

Juan is also consistently identified as a port in judicial opinions of this Court and other courts. See, e.g., Stemcor USA, Inc. v. United States, 26 CIT 1373, 1374 (2002); Atari Caribe, Inc. v. United States, 16 CIT 588, 799 F. Supp. 99, 101 (1992); see also, e.g., United States v. Cerecedo Hermanos y Campañia, 209 U.S. 337, 338 (1908); Esso Standard Oil Co. (PR) v. United States, 559 F.3d 1297, 1300 (Fed. Cir. 2009); P.R. Ports Auth. v. Fed. Mar. Comm'n, 531 F.3d 868, 871, 878 (D.C. Cir. 2008), cert. denied, 129 S. Ct. 1312 (2009); Camacho v. P.R. Ports Auth., 369 F.3d 570, 572 (1st Cir. 2004); Navieros Inter-Americanos, S.A. v. M/V Vasilia Express, 120 F.3d 304, 309 (1st Cir. 1997); San Juan Towing & Marine Servs. v. P.R. Ports Auth., No. 08-1284 (JP), 2009 U.S. Dist. LEXIS 17523, *2 (D.P.R. Mar. 4, 2009).  Finally, PRT, itself, responded "San Juan, Puerto Rico" when asked to "[i]dentify the *port of last departure in the United States* which forms the basis for the plaintiff's claim pursuant to 19 U.S.C § 1466(e)." Interrogs. at 3(b) (emphasis added).[8]

---

function of the courts--at least where the disposition required by the text is not absurd--is to enforce it according to its terms." Lamie v. United States Tr., 540 U.S. 526, 534 (2004) (citation and internal quotation marks omitted).

   [8] Customs maintains port codes for "official ports of entry in the United States." Locate a Port Of Entry, http://www.cbp.gov/xp/cgov/toolbox/contacts/ports/ (last visited Aug. 7, 2009).  Of note, the Customs port code for "San Juan, PR (Area Port)-(Service Port)" is 4909. See Service Port-San Juan, PR (Area Port), http://www.cbp.gov/xp/cgov/toolbox/contacts/ports/pr/4909.xml (last visited Aug. 7, 2009).

Court No. 04-00463                                                    Page 8

San Juan, Puerto Rico, is therefore both a port and part of the United States for the purposes of the Vessel Repair Statute. As a consequence, the Honcho has not been away from a U.S. port for more than two years and its repairs in the Dominican Republic are therefore not exempted under section 1466(e).

**B. Title 48 of the United States Code Also Defines Puerto Rico as Part of the United States**

Chapter 4 of Title 48 of the U.S. Code[9] reinforces the plain language reading of section 1466 discussed above. Chapter 4 groups Puerto Rico with the United States for the purposes of tariff collection and taxation.[10] The coasting trade between Puerto Rico and the U.S. is regulated according to U.S. rules, see 48 U.S.C. § 744, and tariff duties are uniform with the mainland:

> The same tariffs, customs, and duties shall be levied, collected, and paid upon all articles imported into Puerto Rico from ports other than those of the United States which are required by law to be collected upon articles imported into the United States from foreign countries.

48 U.S.C. § 739.

---

[9] The majority of the provisions in this chapter, including sections 739, 741 and 744 cited below, are codifications of the Foraker Act (1900) and the Jones-Shafroth Act (1917), Congressional legislation which established civilian government on the island of Puerto Rico and defined the citizenship of Puerto Rican residents.

[10] Similarly, the United States Attorney General has recognized that nationalization placed Puerto Rican vessels upon the same footing as all other American vessels, making Puerto Rican vessels as dutiable as other U.S. vessels. See 23 Op. Att'y. Gen. 414, 416-18 (1901).

     Both section 1466 and the above-cited sections of Chapter 4 govern the same subject matter -- the imposition of tariffs -- and Chapter 4 predated section 1466. Thus Congress specified that Puerto Rico as a U.S. territory was to be governed by the same laws and regulations which are the subject matter of this proceeding. As a result, the most logical reading of section 1466 is that Puerto Rico constitutes part of the United States. Had Congress intended a contrary interpretation, it would have stated that desired interpretation in its prior treatment of Puerto Rico in the United States Code.

## C. Customs Regulations Do Not Change this Analysis

     Customs Regulations, specifically 19 C.F.R. § 4.14, treat Puerto Rico and the United States identically: "[19 U.S.C. § 1466] . . . requirements are effective upon the first arrival of affected vessels in the United States or Puerto Rico." 19 C.F.R. § 4.14(a). Plaintiff argues that, were Puerto Rico to be considered a port of the United States, the "or Puerto Rico" phrase in section 4.14 would be superfluous. Pl.'s Mem. 3 & n.1. 19 U.S.C. § 1401's definition of "United States," however, is limited to Title IV and Part I of Title III of the Tariff Act of 1930, and does not, by its terms, extend to 19 C.F.R § 4.14, a separate regulation adopted by the agency. Therefore, section 4.14(a)'s use of the phrase "or Puerto Rico" is not redundant, but rather reflects Congress's consistent intent of treating Puerto

Court No. 04-00463 Page 10

Rico as a port of the United States for the purposes of section 1466. The "or Puerto Rico" phrase in section 4.14 resolves any possible or potential ambiguity as to where declaration, entry and payment of the tax must be made, and therefore mirrors section 1401 in treating Puerto Rico as part of the United States.[11]

---

[11] Assuming, *arguendo*, that this portion of the agency's regulations could be interpreted in PRT's favor to show that San Juan, Puerto Rico, is not treated as a U.S. port, agency regulations are subordinate to the U.S. Code. A court "must give effect to the unambiguously expressed intent of Congress" over the determination of an administrative agency. FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 125-126 (2000) (citing Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-843 (1984)). Nothing in the administrative regulation could outweigh clear, unambiguous language promulgated by Congress. Any hypothetical contradiction between 19 C.F.R. § 4.14 and 19 U.S.C. § 1466 would be resolved with deference to section 1466.

Court No. 04-00463 Page 11

## **CONCLUSION**

Therefore, upon consideration of Defendant United States' Motion for Summary Judgment, and Plaintiff PRT's Cross-Motion for Summary Judgement, Defendant's motion is hereby GRANTED and Plaintiff's cross-motion is hereby DENIED. Judgment will be entered accordingly.

              /s/          
Donald C. Pogue, Judge

Dated: August 25, 2009
       New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| PUERTO RICO TOWING & BARGE CO., <br><br>    Plaintiff, <br>     v. <br>UNITED STATES, <br><br>    Defendant. | Court No. 04-00463 <br>Before: Pogue, Judge |

## **JUDGMENT**

  The court, having considered all the papers and proceedings in this matter and having issued an opinion granting Defendant's motion for summary judgment, now, in accordance with that opinion, it is hereby

  ORDERED that this matter is dismissed.

                  /s/
                Donald C. Pogue, Judge

Dated: August 25, 2009
   New York, New York

# NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: _____   By: _____
                                     Deputy Clerk